## In re Anonymous No. 53 D.B. 93

Disciplinary Board Docket no. 53 D.B. 93.

*Hearing Committee,* January 27, 1994—

## I. FINDINGS OF FACT

(1) The respondent, [    ] was born January 29, 1947 and was admitted to the practice of law in the Commonwealth of Pennsylvania on May 27, 1980. He maintains his office at [    ] and resides at [    ].

(2) The respondent's registration status is "active." He is subject to the jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent has been employed as an attorney for the [A] for approximately 17 years. (N.T. 31.)

(4) Respondent is a veteran of the U.S. Army, and he served a tour of combat duty in Viet Nam as an airborne ranger for approximately one year from 1969-1970 during which time he received several decorations for his service in Viet Nam including a Bronze Star. (N.T. 32-33.)

(5) By order, dated June 22, 1993, the Supreme Court of Pennsylvania referred this matter to the Disciplinary Board for disciplinary proceedings pursuant to Pa. R.D.E. 214(d), relating to attorneys convicted of crimes.

(6) At approximately 3 a.m. on the night of February 24, 1992, an incident occurred during which respondent

was observed passing through the yards of two neighbors at [    ] and [    ]. (N.T. 9.)

(7) Respondent's neighbors phoned the [B] Township police department to report a possible burglary. Corporal [C] of the [B] Township police department, responded to the call. (N.T. 9.)

(8) Corporal [C], upon arriving at the scene, heard breaking glass and observed the respondent coming around the corner of a neighbor's house. He saw that respondent was armed with what he described to be a Mack-10 semi-automatic 9 millimeter weapon. (N.T. 10-11.)

(9) Officer [C] drew his service revolver and challenged the respondent, who appeared to be stumbling. Respondent lost his footing, fell to the ground, was never able to regain his footing, and he was disarmed by Officer [C]. (N.T. 12.)

(10) Corporal [C] testified that although respondent never pointed the weapon directly at him, [C] did feel in danger because of the fact he was confronted by an armed individual. (N.T. 12.)

(11) After apprehending the respondent, Officer [C] observed that respondent had minor cuts on both hands and there was blood on his hands and on the weapon that he was carrying. (N.T. 13.)

(12) Corporal [C], in conducting an investigation, subsequent to the arrest, observed broken glass at the residence located at [    ]. (N.T. 14.)

(13) Corporal [C] testified that he inspected the respondent's residence and found three spent bullet casings in the house. (N.T. 19.)

(14) Corporal [C] testified that he detected an odor of alcohol on respondent and that he observed respondent falling down repeatedly and that respondent told him that he thought he was being pursued by a female, although Corporal [C] saw no sign of such individual. (N.T. 19-20.)

(15) Respondent was charged with various offenses, including loitering and prowling at night in violation of

18 Pa.C.S. §5506. The criminal charges were docketed to No. [    ] in the Court of Common Pleas of [    ] County, Pennsylvania. (Petitioner's exhibits 1-8.)

(16) On September 24, 1992, respondent pleaded nolo-contendere to the offense of loitering and prowling at night in violation of 18 Pa.C.S. §5506. (Petitioner's exhibit 9.) On that date, the Court of Common Pleas accepted respondent's plea and sentenced him to a fine of $150.00, 12 month's probation in payment of costs and restitution. (Petitioner's exhibit 10.)

(17) Because of adverse publicity from this incident respondent almost lost his job but did not. (N.T. 41.)

(18) Respondent successfully completed the terms of his sentence receiving an early discharge from his probation. (N.T. 42)

(19) Respondent, on March 2, 1992, came under the care of Dr. [D] a staff psychiatrist at the Department of Veteran's Affairs in [    ], Pennsylvania, and he has received a service connected disability from the Department of Veteran's Affairs for post-traumatic stress disorder. (Respondent's exhibit 4.) (N.T. 45.)

## II. DECISION OF THE PANEL

The hearing panel has been asked to consider what discipline, if any, would be appropriate, given the facts and circumstances surrounding the entry of the plea of nolo-contendere by respondent to the charge of loitering and prowling at night, in violation of 18 Pa.C.S. §5506. It has been agreed by both petitioner and respondent that the entry of a plea of nolo-contendere to this charge constitutes a "serious crime" as defined in Rule 214(i) Pa.R.D.E.

Respondent argues that mitigating circumstances exist to warrant no discipline based upon his condition of post-traumatic stress disorder resulting from his wartime experience. The majority of the panel, while acknowledging that post-traumatic stress disorder may provide mitigating

circumstances, is of the opinion that respondent committed a serious crime of a life-threatening nature and therefore the imposition of disciplinary action is warranted. It is the decision of the majority of the hearing panel that an informal admonition would be in keeping with the rehabilitative nature of our disciplinary system, while at the same time recognizing the serious consequences of the respondent's criminal act.

## ORDER

And now, March 23, 1994, upon consideration of the report and majority recommendation of Hearing Committee [     ] filed January 27, 1994; it is hereby ordered that the said [respondent] of [     ] County be subjected to an informal admonition by Disciplinary Counsel as provided in Rule 204(a)(6) of the Pennsylvania Rules of Disciplinary Enforcement. Costs are to be paid by the respondent.